# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN SCHEMELZER, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> MARK J. MUNCY, et al., ) <br> ) <br> Defendants. ) <br> _____ ) | Cause No. 3:16-CV-00290-GCS |

## MEMORANDUM and ORDER

SISON, Magistrate Judge:

### I. INTRODUCTION

The instant matter involves a collision between Plaintiff Steven Schemelzer's vehicle and a semi-tractor trailer driven by Defendant Mark Muncy. The allegations in the Amended Complaint state that Muncy was trying to back into a private driveway and in doing so obstructed traffic. Eventually, Schmelzer collided with the semi-tractor trailer and suffered extensive injuries. Schmelzer claims that he suffered traumatic brain injury, facial fractures and other injuries as a result of the collision.

This matter comes before the Court pursuant to a discovery dispute between the parties held on March 26, 2019. There are currently two outstanding issues before the Court. The first is whether Plaintiff's failure to disclose its treating physicians as expert witnesses under Rule 26(a)(2) is justified or harmless. The

Court finds that Plaintiff's non-disclosure is neither justified nor harmless and therefore appropriate sanctions are warranted under Rule 37.

The second issue before the Court is whether billing personnel from various hospitals who were disclosed by the Plaintiff in his initial disclosures need to be disclosed as expert witnesses. Plaintiff intends to use these witnesses to discuss the customary and usual charges of the hospitals where they work. Plaintiff contends that these witnesses are lay witnesses and need not be disclosed as experts. Defendants contend that they are experts and therefore are subject to the expert disclosure requirements under Rule 26(a)(2). Based on the information currently before the Court, the Court finds that these individuals are expert witnesses and therefore need to be disclosed as expert witnesses pursuant to Rule 26(a)(2). The Court explains its decision regarding these matters as follows:

## II. BACKGROUND

### A. The Discovery dispute between the parties.

On March 26, 2019, the Court held a discovery dispute conference that addressed three issues between the parties. The first issue involved whether Defense counsel had violated Rule 30(c) of the Federal Rules of Civil Procedure by talking with a witness during a break after that witness had already been tendered for testimony. The second issue involved whether billing personnel from various hospitals who would be called to talk about customary and usual charges of the hospital had to be disclosed as expert witnesses. The final issue involved whether treating physicians disclosed by the Plaintiff, who would be offered to give

testimony about causation, diagnosis and prognosis, had to be disclosed as expert witnesses. Prior to the discovery conference, the Court received and reviewed the briefs of the parties wherein both sides explained and argued their respective positions (Plaintiff – Doc. 168, 170; Defendants – Doc. 172, 173).

After hearing the arguments of the parties at the discovery dispute conference, the Court made various rulings. Regarding the first issue described above, the Court found that there was a Rule 30(c) violation committed by defense counsel. However, the Court denied the sanctions that Plaintiff was seeking. As to the second issue regarding the billing personnel, the Court ordered the parties to further brief the issue given that it did not get much treatment in the parties' briefs. Finally, as to the third issue, the Court found that the treating physicians identified by the Plaintiff should have been disclosed as experts pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure. However, the Court left open the question of what the appropriate remedy should be. As such, the Court ordered the parties to further brief the issue of whether the Plaintiff's failure to disclose was justified or harmless and if it was not, what the appropriate sanction should be. The Court received and reviewed the additional briefing of the parties and the matter is now ripe for a ruling.

B.   The Court's prior decision regarding Plaintiff's failure to disclose.

Prior to explaining why the Plaintiff's failure to disclose was not harmless and why sanctions are warranted under Rule 37, the Court must explain why there was a disclosure violation in the first place.

Plaintiff propounded his initial disclosures to Defendants pursuant to Rule 26(a)(1) on July 18, 2016.  In those disclosures, Schmelzer identified a number of individuals who had treated him at various hospitals and institutions.  A typical disclosure identifying the treating physicians would note that the individual provided care and treatment, had knowledge of the nature and extent of the injuries, as well as the nature of the treatment provided, and the reasonableness and necessity of such treatment.  Defendants objected to these treating physicians offering expert testimony because they were not properly disclosed as non-retained experts under Rule 26(a)(2).  Plaintiff countered stating that he had complied with the rules because he had identified such individuals as treating physicians in his initial disclosures and provided in a timely manner all relevant medical records that such physicians reviewed and relied upon.

Based on the arguments of the parties, it was clear to the Court that while the names of the treating physicians were disclosed as part of the initial disclosures, Plaintiff did not formally designate any of the treating physicians as experts under Rule 26(a)(2).  The Federal Rules of Civil Procedure require disclosures for both fact and expert witnesses.  The disclosure of fact witnesses is governed by Rule 26(a)(1)(A). The disclosing party must identify the name, address and telephone

number (if known) and the subjects of the discoverable information the witness may have. *See* FED. R. CIV. PROC. 26(a)(1)(A).

As for expert witnesses, they are broken down into two categories, retained and non-retained experts. The disclosure of a retained expert witness also requires the disclosure of a written report containing information such as the opinions, facts, exhibits, qualifications, prior testimony and compensation received by the witness. *See* FED. R. CIV. PROC. 26(a)(2)(B). The disclosure of a non-retained expert does not require the disclosure of a report. Rather, it simply requires (1) the subject matter on which the witness is expected to testify; and (2) a summary of the facts and opinions to which the witness is expected to testify. *See* FED. R. CIV. PROC. 26(a)(2)(C).

Plaintiff first claims that the treating physicians are fact witnesses and are competent to testify to those things that they observed during the course of treatment. Plaintiff thus seems to argue that such witnesses need not be disclosed as expert witnesses. This is certainly true to an extent. *See, e.g., Brandon v. Village of Maywood*, 179 F. Supp.2d 847, 859 (N.D. Ill. 2001)(stating that "[f]or a treating physician, testimony about what the physician actually observed and what treatment he provided are not matters outside of the ken of the average juror, so Rule 702 and the disclosure obligations of Rule 26(a)(2)(A) are not triggered."). However, in his briefing and during the discovery dispute conference, Plaintiff noted that he expected the treating physicians to offer opinions on causation, diagnosis and prognosis. Given those representations, it is clear that the treating physicians'

testimony would not be limited to what they observed but would, in fact, be offering expert testimony.  For example, testimony about prognosis would clearly qualify as expert testimony, thus triggering the expert disclosure requirements. *See, e.g., Brandon*, 179 F. Supp.2d at 859-860 (noting that "opinions about [] prognosis or necessity for future treatment . . . required him to rely on medical expertise outside of the lay person's realm of knowledge, and thus it is expert testimony as defined by Rule 702, so disclosure is required under Rule 26(a)(2)(A)).

Plaintiff next argues that to the extent expert disclosures are required, he complied with such requirements.  Plaintiff notes that such treating physicians are non-retained experts and that there are no specific procedural requirements for such disclosures.  (Doc. 168, p. 5).  Again, Plaintiff is only partially correct.  It is true that treating physicians are non-retained experts, and thus would not be subject to the more extensive disclosure requirements for retained experts set forth in Rule 26(a)(2)(B).  However, Plaintiff must still comply with the disclosure obligations set forth in Rule 26(a)(2)(C), which requires disclosure of the subject matter and a summary of the facts and opinions to which the witness will testify. *See* FED. R. CIV. PROC. 26(a)(2)(C).

Plaintiff claims that he complied with such requirements because he disclosed the treating physicians in his initial disclosures and provided complete and timely copies of his medical records.  (Doc. 168, p. 5).  However, Plaintiff's identification of the treating physicians in his initial disclosures does not excuse him from making expert disclosure if those witnesses are to provide expert

testimony. *See, e.g., Tribble v. Evangelides*, 670 F.3d 753, 759 (7th Cir. 2012)(noting that "duty to disclose a witness as an expert is not excused when a witness who will testify as a fact witness and as an expert witness is disclosed as a fact witness."). And, here it is clear that Plaintiff did intend for the treating physicians to offer expert testimony.

The Seventh Circuit has made it clear that treating physicians must be designated as experts if they are to provide expert testimony. See *Musser v. Gentiva Health Services*, 356 F.3d 751, 758 (7th Cir. 2004). *See also O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 n.14 (7th Cir. 1994)(rejecting notion that treating physician was exempt from the requirements of FRE 702 and 703 and that treating physician should be treated like any other expert when offering expert testimony regarding causation). To illustrate, in *Karum Holdings LLC v. Lowe's Companies, Inc.*, 895 F.3d 944 (7th Cir. 2018), the plaintiff disclosed a witness as a "fact" witness under Rule 26(a)(1)(A), but there was no later disclosure that this person would serve as an expert witness. *Id.* at 952. The Seventh Circuit agreed with the district court that the plaintiff's "purported expert disclosure . . . was plainly inadequate[.]" *Id.* The Seventh Circuit noted that the plain meaning of the rules "demand[ed] a formal designation for expert disclosures." The Seventh Circuit further noted that "[t]here [wa]s a significant distinction between disclosing an individual as a fact witness under Rule 26(a)(1)(A) and disclosing an expert witness under Rule 26(a)(2)." *Id.* Thus, the Seventh Circuit concluded that the plaintiff had

failed to meet the disclosure requirements because there was nothing indicating that such a witness would be an expert witness. *Id.*

Because Plaintiff failed to make a formal designation of the treating physicians as experts, he clearly did not satisfy the non-retained expert disclosure requirements under Rule 26(a)(2)C). The provision of medical records likewise did not satisfy the expert disclosure requirements. *See, e.g., Cripe v. Henkel*, 318 F.R.D. 356, 360 (N.D. Ind. 2017)(holding that proper disclosure of a treating physician required "a document prepared and signed by counsel providing the information required by Rule 26(a)(2)(C)."). In light of the above, the Court concluded that the Plaintiff had violated the disclosure requirements of Rule 26(a)(2)(C).

### III. ANALYSIS

**A. The failure by the Plaintiff to disclose his treating physicians as expert witnesses was neither justified nor harmless.**

Rule 37(c)(1) provides the sanction for failing to comply with the disclosure requirements under Rule 26. The rule states as follows:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

FED. R. CIV. PROC. 37(c)(1). The rule clearly provides for mandatory and automatic exclusion, unless the non-disclosure was justified or harmless. *See Musser*, 356 F.3d at 758. As explained below, Plaintiff's non-disclosure was neither justified nor harmless.

### 1. There was no substantial justification for the non-disclosure.

The question of justification can be dispensed with quickly. Plaintiff maintained that he complied with the disclosure requirements under Rule 26(a)(2)(C) because he disclosed the identity of the treating physicians in his initial disclosures and provided complete medical records to the other side. (Doc. 168, pgs. 3-5). Thus, Plaintiff offers no justification for the non-disclosure.

Plaintiff, however, appears to be somewhat confused over the disclosure requirements for retained and non-retained experts. For example, Plaintiff notes in his brief that as compared to retained experts "there are no specific procedural requirements for the disclosure of a non-retained expert." (Doc. 169, p. 5). Plaintiff also seems to argue that because of the hybrid nature of treating physicians as both fact and expert witnesses that expert disclosures are not required. As noted above, Plaintiff is wrong on both points. Thus, to the extent that Plaintiff seeks to advance a misunderstanding of the law as justification for his non-disclosure, it is not sufficient. The Seventh Circuit has clearly foreclosed that option as a possibility. *See, e.g., Tribble*, 670 F.3d at 760 (noting that a belief that testimony would be lay and not expert testimony is not justification, but rather is a misunderstanding of the law which does not provide substantial justification for a disclosure violation). Having determined that there is no substantial justification for the non-disclosure, the Court now turns to the issue of harmlessness.

### 2. The non-disclosure was not harmless.

The Court retains broad discretion in determining whether a failure to comply with applicable disclosure rules is harmless. *See David v. Caterpillar*, 324 F.3d 851, 857 (7th Cir. 2003). That being said, the Seventh Circuit has identified four factors that a court should consider in determining whether a non-disclosure was harmless. *See Tribble*, 670 F.3d at 760. Those factors are as follows:

(1) the prejudice or surprise to the party against whom the evidence is offered;

(2) the ability of the party to cure the prejudice;

(3) the likelihood of disruption to the trial; and

(4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date.

*Id.* (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Plaintiff argues that the non-disclosure was harmless because he produced the entirety of his medical records in a timely manner. According to the Plaintiff, the medical records contained everything the Defendants needed to know regarding any opinions the treating physicians would offer. Moreover, Plaintiff argues that the Defendants had the opportunity to depose the treating physicians on their opinions regarding causation, diagnosis and prognosis. As such, the Defendants are not prejudiced and cannot claim surprise by the expert testimony of the treating physicians.

The Seventh Circuit, however, disposed of the same type of arguments regarding harmlessness in *Musser v. Gentiva Health Services*, 356 F.3d 751 (7th

Cir. 2004). In *Musser*, the plaintiffs claimed that they had disclosed the identity and records of all of their witnesses and that the defendant had an opportunity to depose these witnesses as to their opinions. *Id.* at 757. The plaintiffs further claimed that it would be a "pointless formality" to disclose in writing a list of names with the designation expert witness when those names were already known to the defendant. *Id.* The Seventh Circuit, however, stated the following in response to the plaintiff's argument:

> Formal disclosure of experts is not pointless. Knowing the identity of the opponent's expert witnesses allows a party to properly prepare for trial. [The defendant] should not be made to assume that each witness disclosed by the [plaintiff] could be an expert witness at trial.

*Id.* at 757. Accordingly, the Seventh Circuit held that the district court did not abuse its discretion in finding harm because the defendant "was denied the opportunity to question the witness in their expert capacity." *Id.* at 759. *See also Tribble*, 670 F.3d at 760 (noting prejudice in the failure to disclose an expert even though the plaintiff knew the witness was going to testify and knew the limit of the testimony); *Karum*, 895 F.3d at 952 (rejecting the notion that "a Rule 26(a) violation [wa]s harmless simply because the opposing party knew the witness would testify in some capacity.").

The same harm arises in the instant case. As part of the briefing, the Court reviewed the deposition testimony of five treating physicians taken by the Defendants. The Defendants argued that they were prejudiced because they were denied the opportunity to depose the witnesses as experts. Because Plaintiff did not identify his treating physicians as expert witnesses, the Defendants assumed that

those witnesses would be testifying as fact witnesses. As such, their testimony would be limited to what they actually observed and what treatment was provided. Those matters would not require expert testimony. *See Brandon*, 179 F. Supp. 2d at 859.

A review of the deposition testimony provided by the parties confirms the fact that Defendants did not question the treating physicians as if they were expert witnesses. The deposition testimony of Dr. Andrew Saltzman illustrates this point. Dr. Saltzman was the treating physician for Schmelzer's shoulder. After defense counsel finished his questioning of Dr. Saltzman, Plaintiff's counsel asked a series of questions focused on what effect Schmelzer's injury would have in the future, such as whether it would affect his ability to play golf. Clearly, the questions asked by Plaintiff's counsel were aimed at his future prognosis. On re-direct, Defense counsel was able to get Dr. Saltzman to admit that he did not know whether Schmelzer had improved after he had seen him.

This line of questioning demonstrates the harm that Defendants suffered as a result of the non-disclosure. Plaintiff counsel's clear intent on cross-examination was to elicit prognosis testimony from Dr. Saltzman. However, because Dr. Saltzman was never identified as an expert witness, defense counsel never followed up on this point as if he were an expert. Instead, defense counsel focused on the fact that Dr. Saltzman did not know whether Schmelzer's condition had improved after he had seen him. This is logical because defense counsel thought that Dr. Saltzman was a fact witness whose testimony would be limited to what he directly

observed during his treatment of Schmelzer.  As such, prognosis questions such as whether Schmelzer could play golf in the future would have no bearing to defense counsel because Dr. Saltzman was never identified as an expert witness.

The Court concludes that with respect to the first prong the non-disclosure was prejudicial.  This is made clear by the fact that Defendants surely would have questioned the treating physicians differently had their status as experts been known.  *See Cripe*, 318 F.R.D. at 362.  This factor thus clearly weighs in favor of a finding of harm.  As to the other prongs, the Court finds that there was no bad faith or willfulness on the part of the Plaintiff.  As such, this factor does not weigh in favor of a finding of harm.

As to the ability of the party to cure the prejudice, Plaintiff claims that there is still an opportunity to cure any prejudice by redeposing the treating physicians and permitting the Defendants to name rebuttal experts.   While that may be true, the ability to cure this prejudice does not lie with the Plaintiff, but rather with the Court if it so decides to reopen discovery and permit such depositions.  *See Cripe*, 318 F.R.D. at 362.  The reopening of discovery would result in increased costs and burdens to the Defendants.  As such, this factor cuts in favor of a finding of harm.

The third factor is the likelihood of disruption to the trial, which is now currently set for February 10, 2020.  Time would have to be set aside for Plaintiff to make the appropriate disclosures and for the Defendants to conduct additional depositions.  And, here multiple depositions would need to be taken, not just a few.  The Defendants would also need the time to retain any potential rebuttal experts

and for the Plaintiff to depose them. Given that the trial is six months away, all of this could conceivably be accomplished prior to the trial date. That being said, there is not much room for error, and thus there is a possibility that the trial could nevertheless be delayed. Therefore, this factor only weighs slightly in favor of a finding of no harm.

Considering the cumulative balance of the above factors, the Court concludes that the Plaintiff's non-disclosure was, in fact, harmful. The Court now turns to the consideration of the appropriate sanctions for the violation.

## B. The appropriate sanctions to be levied under Rule 37.

Having established that the Plaintiff's non-disclosure was neither justified nor harmless, the Court addresses the appropriate sanction that should be imposed for the violation. A violation of the disclosure rules results in a mandatory and automatic exclusion of the information at trial. *See* FED. R. CIV. PROC. 37(c)(1). However, the Seventh Circuit has cautioned courts to consider carefully the alternative sanctions set forth in Rule 37 when imposing exclusionary sanctions. *See Musser*, 356 F.3d at 760. The alternative sanctions include among other things the ordering of the "payment of the reasonable expenses, including attorney's fees caused by the failure[.]" FED. R. CIV. PROC. 37(c )(1)(A).

This Court is mindful of the Seventh Circuit's warning that "[i]n the normal course of events, justice is dispensed by the hearing of cases on their merits." *Musser*, 356 F.3d at 759. Taking that into consideration, the Court believes that the complete exclusion of expert testimony from Schmelzer's treating physicians is

too harsh of a sanction given the nature of the non-disclosure. Exclusion is also not appropriate when there appears to be sufficient time for a limited re-opening of discovery given that the trial date is six months away.

The Court finds the approach taken in *Beauchamp v. City of Dixon*, No. 11-CV-50121, 2014 WL 901437 (N.D. Ill. Mar. 7, 2014) to be persuasive and a model for what should occur in the instant case. In *Beauchamp*, there was a similar failure to identify witnesses as experts that warranted an appropriate sanction. Instead of excluding the witnesses' opinion evidence, the court instead re-opened discovery for the limited purpose of redeposing various witnesses and to obtain rebuttal experts. *Id.* at *8. But, in order to cure the prejudice faced by the Defendants, the court ordered the payment of reasonable expenses, including attorney's fees, caused by the additional depositions. *Id.*

The Court thus orders that the following steps be taken: First, with respect to the treating physicians that the Plaintiff wishes to use to offer expert testimony, Plaintiff is required to provide to the Defendants "a summary of the facts and opinions to which the witness is expected to testify[.]" Second, the Defendants should be allowed to re-depose such treating physicians on their opinions, the bases for the opinions, their qualifications, and other questions they would have asked had the witnesses been properly disclosed. Third, the Defendant should be allowed to obtain rebuttal experts in a timely manner. Fourth, Plaintiff should bear the costs and certain fees necessitated by re-opening these depositions. This would include the witness fees, the court reporter fees, fees for copies of documents and

attorney's fees incurred during the deposition, but only for time spent deposing the witness, not for time spent in preparing for the depositions. Finally, there will be a time limit on each deposition of 2.5 hours. Plaintiff will not have to bear the costs of the Defendants obtaining any rebuttal experts.

The Court imposes the following deadlines so as to prevent any unnecessary delay in the trial of this case: the Rule 26(a)(2)C)(ii) summaries should be provided by **August 28, 2019**; any redepositions of the treating physicians should occur by **October 2, 2019**; the Defendants' rebuttal experts should be disclosed and any required disclosures provided by **November 6, 2019**; and any deposition of rebuttal experts should occur by **December 4, 2019**.

C. **Hospital billing personnel who are going to testify about unpaid hospital bills being within the usual and customary charges in the area must be properly disclosed and testify as expert witnesses.**

The final matter before the Court is a dispute between the parties over whether hospital billing personnel should be disclosed and testify as expert witnesses. The issue arises over the testimony of Ms. Craven who is a billing employee at the Karl Foundation in Urbana, Illinois, which is one of the places where Schmelzer received treatment. Plaintiff wishes to use Ms. Craven and billing personnel from other hospitals to testify about the charges of their respective hospitals and whether such charges are the customary and usual charges for similar services in the area. Plaintiff claims that such testimony is not subject to the expert disclosure requirements under Rule 26 or the expert testimony requirements under Rule 702 of the Federal Rules of Evidence. The Defendants

disagree and assert that Ms. Craven and others like her must be disclosed and testify as expert witnesses.

Plaintiff argues that Ms. Craven and others like her are not expert but fact witnesses. With respect to Ms. Craven, Plaintiff asserts that her job is to calculate hospital bills and to determine what the customary charges are for similar services at other facilities. Plaintiff asserts that her testimony is based on facts gathered as part of her work, and thus her testimony about usual and customary charges is factual, as opposed to opinion testimony.

Defendants counter by noting that such testimony would be based on specialized knowledge, which would make it subject to Rule 702 of the Federal Rules of Evidence. Ms. Craven's job and others like her is to gather data from other facilities to determine a proper range. She then extrapolates which bills are within the range the hospital is going to consider as usual and customary and charges for those amounts accordingly. Defendants claim that such knowledge is technical and specialized and thus qualifies as expert testimony.

After hearing the argument of the parties on this matter, the Court asked for additional briefing on this issue. The Court has considered the authorities provided by the parties, and the Court agrees with the Defendants that billing personnel who wish to testify about the usual and customary charges for unpaid hospital bills must be properly disclosed and testify as expert witnesses. The Court explains as follows:

Because this is a diversity case, the issue over whether expert testimony is needed to establish usual and customary charges has to be addressed under Illinois

law.  Federal courts sitting in diversity must apply the Federal Rules of Civil Procedure in procedural matters and the state substantive law for the causes of action.  *See Musser*, 356 F.3d at 754.  Here, the immediate question before the Court is whether expert testimony is required to establish usual and customary charges.  There appears to be no dispute between the parties that a hospital billing employee may testify factually as to the amount of hospital bills actually paid by the Plaintiff.  However, as to unpaid bills, the parties disagree as to whether expert testimony is required to establish the usual and customary nature of such charges.  This appears to be a question of substance governed by Illinois law because this issue goes to what type of evidence is needed to establish a personal injury claim for unpaid bills.

An analysis of Illinois law confirms that expert testimony is indeed required to show that a charge is usual and customary, especially when it comes to unpaid medical bills. Under Illinois law, in order for a plaintiff to recover for medical expenses, the plaintiff must among other things show that the charges were reasonable. *See Arthur v. Catour*, 833 N.E.2d 847, 853 (Ill. 2005).  The fact that a medical bill for treatment was rendered and paid results in a finding that the bill was prima facie reasonable.  *Id.* (citing *Flynn v. Cusentino*, 375 N.E.2d 433, 436 (Ill. 1978)).

As for unpaid bills, a party can establish the reasonableness of such bills by presenting "the testimony of a person having knowledge of the services rendered and the usual and customary charges for such services." *Baker v. Hutson*, 775

N.E.2d 631, 637-638 (Ill. App. Ct. 2002). However, Federal courts interpreting Illinois law, including the Southern District of Illinois, have found that expert testimony is required to establish that each unpaid medical bill represents the usual and customary charge for the service provided. *See Haack v. Bongiorno*, No. 08-C-02488, 2011 WL 862239, at *6 (N.D. Ill. Mar. 4, 2011); *Battle v. O'Shaughnessy*, No. 11-C-1138, 2012 WL 4754747, at *4 (N.D. Ill. Oct. 4, 2012); *Crecy v. Kankakee Sch. Dist. #111*, No. 15-CV-1014, 2017 WL 6945336, at *5 (C.D. Ill. Feb. 6, 2017); *Queen v. W.I.C., Inc.*, No. 14-CV-519-DRH-SCW, 2017 WL 4223950, at *2 (S.D. Ill. Sept. 22, 2017). The Court finds these authorities persuasive and chooses to follow them. The Court further notes that such authorities are well-reasoned. For example, in *Queen*, the court noted that expert testimony was required because "the average layperson does not have knowledge of the rates charged for medical services in a particular area." *Queen*, 2017 WL 4223950, at *7.

In light of the above, the Court finds that if the Plaintiff wishes to recover for any unpaid medical bills, it must show the reasonableness of such bills, which must be done through expert testimony. If the Plaintiff has not yet designated an expert on this matter, it may do so, but only along the same timelines and conditions that the Court is permitting the Plaintiff to designate his treating physicians as experts. SO ORDERED.

Dated: August 14, 2019.

GILBERT C. SISON<br>
United States Magistrate Judge