UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVAN SCHMELZER, and<br>SHELLY SCHMELZER,<br><br>    Plaintiffs,<br><br>and<br><br>SENTRY INSURANCE,<br><br>    Intervenor-Plaintiff,<br><br>vs.<br><br>MARK J. MUNCY,<br>ROSS WILSON TRUCKING, INC,<br>and<br>TRANSPORT SERVICES OF<br>SULLIVAN IL, LLC<br><br>    Defendants,<br><br>and<br><br>SECURIAN FINANCIAL GROUP,<br>INC.<br><br>    Intervenor-Defendant. | Case No. 3:16-cv-290-GCS |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

On January 14, 2016, Plaintiff Stevan Schmelzer was driving when his vehicle collided with a semi-tanker driven by Defendant Mark J. Muncy. Schmelzer alleges that as a result of the accident, he suffered a traumatic brain injury, and he filed suit seeking, among other damages, compensation for future expenses, including lost future wages. Pending before the Court are several motions to exclude witnesses, discovery and

sanction-related motions, and a request for a status conference. All matters will be resolved ahead of the scheduled final pretrial conference, but the Court will address certain matters at this time. If any party requests additional explanation or analysis, the Court will provide it in a future order.

## *DAUBERT* MOTIONS

Screening evidence is a function that lies "squarely within the purview of the trial judge." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 809 (7th Cir. 2012). When the issue is whether to admit or to exclude the testimony of an expert witness, the Court's discretion is guided by Federal Rules of Evidence 702 and 703 and the principles set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Rule 703 requires that an expert employ "those kinds of facts or data" on which experts in a particular field reasonably rely. *Manpower, Inc. v. Insurance Co. of Pennsylvania*, 732 F.3d 796, 809 (7th Cir. 2013). *Daubert* laid the foundation for Rule 702, which seeks to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005)(quoting *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)).

Rule 702, as amended after *Daubert*, provides that expert testimony is admissible if offered by a witness qualified by knowledge, skill, experience, training or education and if (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness reliably applied the principles and methods to the facts of the case. The standards set forth in *Daubert* extend to non-scientific expert testimony, as well. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S.

137, 147-148 (1999). Rule 702 requires that the expert's scientific, technical, or otherwise specialized knowledge will help the trier of fact to understand the evidence or to determine a fact issue. Simply stated, "Rule 702 requires that expert testimony be relevant, reliable, and have a factual basis – requirements that must be met before the jury is allowed to hear and perhaps be persuaded by the expert testimony." *Lapsley*, 689 F.3d at 809.

Considered together, *Daubert* and Rule 702 allow that expert testimony is admissible only if (1) the expert testifies to valid technical, scientific, or other specialized knowledge; and (2) the testimony will assist the trier of fact. *See Messner v. Northshore Univ. Health System*, 669 F.3d 802, 811-812 (7th Cir. 2012)(citing *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 787-788 (7th Cir. 2000)). "No matter the nature of the witness's expertise, Rule 702 'establishes a standard of evidentiary reliability,' 'requires a valid . . . connection to the pertinent inquiry as a precondition of admissibility,' and mandates that the testimony have 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Manpower, Inc.* 732 F.3d at 806 (citing *Kumho*, 526 U.S. at 149).

The district court judge acts as the gatekeeper for expert testimony, but "the key to the gate is not the ultimate correctness of the expert's conclusions," rather it is "the soundness and care with which the expert arrived at her opinion." *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013). The Court's inquiry focuses "solely on principles and methodology, not on the conclusions they generate." *Id.* (quoting *Daubert*, 509 U.S. at 595). Evaluating reliability requires a flexible inquiry. The relevant consideration is whether the testimony falls outside the range where experts might

reasonably differ. *See Kumho*, 526 U.S. at 153-54. Experts must rely on theories, studies, reports, and other materials and methodologies that are reliable, both in general and in the case. As long as the expert's principles and methodology reflect reliability, vigorous cross-examination, "presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Schultz*, 721 F.3d at 431 (quoting *Daubert*, 509 U.S. at 596).

1. **Jeffrey Polster**

Jeffrey W. Polster is an accident reconstructionist and is a registered professional engineer with a degree in mechanical engineering. He has taken a number of courses related to vehicle collision reconstruction, including one about human factors in traffic accident reconstruction. Plaintiffs do not challenge Polster's general qualifications as an expert witness. Instead, they take issue with certain conclusions he reached as falling outside the scope of his expertise.

Polster concludes that Schmelzer was grossly exceeding the posted speed limit of 55 miles per hour ("mph") at the time of the accident, as he was traveling at 69 mph, and that Schmelzer had his cruise control engaged near 70 mph, demonstrating a determination to maintain this grossly excessive speed. Schmelzer's car was equipped with an event data recorder (EDR), which was imaged and contained data related to the accident. It showed that Schmelzer's vehicle was traveling approximately 69 mph before the crash, and the data indicated that cruise control was engaged. The data covered approximately 4.9 seconds before the collision.

Plaintiff argues that this methodology is flawed because the data includes only the 4.9 seconds preceding the accident. There's no indication that the data pulled from the EDR is unreliable or that it is outside the norm for an accident reconstruction expert to review the EDR data in reaching an opinion as to a vehicle's speed or usage of cruise control immediately prior to an accident. The phrasing of the opinion that Schmelzer was "determined" to continue at 70 mph does stray towards speculating on Plaintiff's state of mind, but the general opinion that the vehicle was operating with cruise control set near 70 mph until just before the accident was reached appropriately.

Polster next opines that the semi's movements just before the collision would have warned an attentive driver to reduce speed. Plaintiff objects because Polster is not a human factors expert, but his resume supports finding that he has training in human-factor analysis and that he is a well-versed accident reconstructionist. Despite Plaintiff's suggestion to the contrary, the record reflects that Polster considered positions of Defendant's truck in the moments leading up to the accident and considered the changing situation ahead of the collision. Plaintiff fails to establish at this time that Polster cannot provide reliable expert testimony on the human factor in the collision and that he cannot opine on what an attentive driver would have done under the circumstances.

The final two opinions that Plaintiffs challenge involve the relationship between speeding and the collision occurring. Like those described above, Plaintiffs' complaints and objections on these issues are more properly raised on cross-examination. The record reflects that Polster engaged in a sound course of inquiry and reviewed appropriate data in reaching his conclusion about the impact of speed on the accident, including whether

it might have been avoided had Plaintiff been driving at a slower rate of speed and leading to the ultimate conclusion that speeding by Plaintiff caused the collision. As such, the motion to exclude his testimony is denied.

2. **Christine Kraft**

Christine Kraft is a medical billing analyst who, according to her *curriculum vitae*, has served as an expert witness since 2011, offering expert testimony on many issues, including the estimating the cost of future medical expenses. Kraft was retained by Defendants to review the life-care plan developed by Plaintiffs' expert, Carol White, and to estimate the cost of Schmelzer's future medical expenses. Kraft concluded that the estimated future medication cost for Schmelzer's injuries was $116,125, while Plaintiffs' two experts on the issue put the cost closer to $600,000.

In reaching the lower figure, Kraft, who has no medical background but does have expertise in medical billing, allegedly substituted generics for branded medications without the input of a medical professional and relied on a website, GoodRX, that generates a coupon or a document for a patient to take to a pharmacy. The pharmacy then honors the price on the documentation, which Plaintiffs argue only helps inform the question of damages so long as GoodRX is in business. Defendants, however, stress that Kraft did not substitute generics for name-brand medications unless a generic medication was listed in Carol White's report.

While it is clear that the experts evaluating the future medical costs Mr. Schmelzer will face disagree in their exact approach, there is not enough in Plaintiffs' motion to convince the undersigned that Kraft's methodology is fundamentally unsound or

unaccepted in the field. Plaintiffs' complaints and issues about the methodology and qualifications of Kraft as an expert are best addressed on cross-examination. Likewise, the Court is not convinced that a medical-billing expert must testify as to present-cash value, which is testimony generally presented by economists. Her testimony will prove useful to a jury in assessing damages, if necessary, and the undersigned finds no basis for striking it at this time. For all these reasons, the motion to exclude the expert testimony of Christine Kraft is denied.

3. **David Gibson**

David Gibson is a vocational economist retained by Plaintiffs to testify about lost income to Plaintiffs as a result of Schmelzer's injuries. Defendants move to exclude Gibson's testimony because he cannot testify that the January 14, 2016 traffic accident at issue caused Schmelzer's injuries. Their argument rests on the supposition that Plaintiffs cannot prove causation without medical testimony, an argument the Court previously rejected. (*See* Doc. 237). The Court similarly finds that the opinion offered by Gibson does not lack foundation, and Gibson's testimony will not be barred at this time.

4. **Lance Trexler**

Dr. Lance Trexler, Ph.D., is a clinical neuropsychologist with extensive experience evaluating, testing, and treating individuals with traumatic brain injuries. Plaintiffs retained Dr. Trexler to opine as to the existence and the extent of Stevan Schmelzer's brain injury, which is at issue. Defendants seek to bar his testimony as to the causation of Schmelzer's brain injury because he was not disclosed to provide an opinion on causation. The Court previously held that lay testimony and circumstantial evidence may

be presented to establish the accident as the alleged cause of Schmelzer's injuries. Dr. Trexler's report focuses on the existence of Schmelzer's traumatic brain injury, the extent of the injury, and the impact of the injury on his life. As part of his analysis, Dr. Trexler concludes that Schmelzer had a severe traumatic brain injury following the traffic accident. The report was completed in 2017, and Dr. Trexler's opinions bring no surprise upon Defendants. Defendants motion does not leave the Court with the belief that Dr. Trexler is unqualified or that his methodology is flawed. As the motion is brought under the *Daubert* standard, the Court declines to limit Dr. Trexler's testimony at trial in the manner requested by Defendants.

5. **Olof Jacobson**

Olof Jacobson is an accident reconstructionist retained by Plaintiffs to opine on the cause of the collision at issue in this case. Defendants do not challenge Jacobson's qualifications as an expert in the field of accident reconstruction. Instead, they argue that his testimony should be excluded, in essence, because his opinions are contradicted by his own testimony and his own calculations related to the effect of speed on the accident. As is the case with Plaintiffs' challenge to Defendants' accident reconstructionist, these arguments go to matters best raised on cross-examination. Defendants do not challenge his methodology, instead focusing on the conclusions he drew from accepted approaches for gathering data. As such, the motion to exclude Jacobsen's testimony is denied.

6. **Carol White**

Carol White is a nurse practitioner who has offered life-care plan testimony in more than 100 depositions in lawsuits involving injured victims. She has testified in

approximately 10 trials and estimates that she has completed hundreds of life care plans. As a nurse practitioner, she performs physical examinations, makes medical diagnoses, orders tests, coordinates care with referring specialists, and prescribes medication. Defendants argue that she is not qualified to offer life-care plan expert testimony, but her background and experience suggest otherwise. She is a supervisory nurse practitioner at a medical clinic and has extensive experience developing life-care plan reports, and that satisfies the undersigned as to her qualifications.

Defendants also challenge White's methodology. To reach her conclusions, White reviewed Schmelzer's medical records and related documents and did an in-person assessment of his condition. She conducted interviews with his treating physicians and medical experts. She explained her rationale for choosing between generic and name-brand medications in her methodology, noting that she opted for name-brand medications to allow for new medications that may be introduced in the future. There is little before the Court to allow the undersigned to discern in what ways White's method deviated from accepted methodologies for developing life-care plans, and the issues raised by Defendants are best addressed through cross-examination. As a result, the motion to exclude Carol White's testimony is denied.

**7. James Sobek, Dr. Bloomberg, Ms. Harminson, and Walter Guntharp**

The Court finds that the motions to exclude these witnesses present closer calls and defers ruling at this time. By separate order, a hearing will be set on these matters during the week of January 27, 2020. Some or all of the arguments raised in the motions may be negated by the Court's previous rulings, including the rulings made herein, and

the Court requests that any arguments presented during the hearing not be duplicative of previously ruled upon questions.

## Conclusion

The Court will rule on the outstanding discovery and sanction-related motions ahead of the final pretrial conference. This case remains set for trial on February 10, 2020. Due to the undersigned's congested docket, the Court intends to set aside no more than two weeks for trial, inclusive of jury selection and closing arguments, and the parties should plan accordingly to allow trial to proceed efficiently.

For the above-stated reasons, the following motions are **DENIED**:

- Motion to exclude testimony of Jeffrey W. Polster (Doc. 181);
- Motion to exclude testimony of Christine Kraft (Doc. 182);
- Motion to exclude testimony of Lance Trexler (Doc. 187);
- Motion to exclude testimony of Olof Johnson (Doc. 191); and
- Motion to exclude testimony of Carol White (Doc. 193).

The joint motion for status conference (Doc. 241) is **DENIED as MOOT**, as many of the issues raised in the motion have been addressed. Those that remain outstanding shall be addressed at a later date.

**IT IS SO ORDERED.**

Dated: January 16, 2020.

Digitally signed by Magistrate Judge Gilbert C. Sison
Date: 2020.01.16 14:22:24 -06'00'

GILBERT C. SISON
United States Magistrate Judge