UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| UNITED STATES OF AMERICA | ‖ | |
|---|---|---|
| | ‖ | |
| v. | ‖ | CRIMINAL NO. SA 10 CR 536 (1) FB |
| | ‖ | CRIMINAL NO. SA 12 CR 666 (1) FB |
| ROBERT BROOKS | ‖ | |

GOVERNMENT'S CONSOLIDATED RESPONSE TO
DEFENDANT'S MOTIONS FOR POST-CONVICTION RELIEF
PURSUANT TO TITLE 28, UNITED STATES CODE, SECTION 2255

COMES NOW the United States of America, by and through its undersigned counsel, and in opposing the Defendant's Motions for Post-Conviction Relief states as follows:

I.   Procedural Status

The Defendant was charged in two separate indictments which were consolidated for trial. The Indictment in Criminal No. SA 10 CR 536 (1) FB charged the Defendant, along with 21 other individuals, to include his wife, with one count of conspiracy in violation of Title 18, United States Code, Section 1349, and eight counts of use of common carriers engaged in interstate commerce to execute a scheme to defraud various mortgage lenders and to obtain money and property from them by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1341.  These charges will be referred to herein as the "mortgage fraud" or "mail fraud" counts.  The Indictment in Criminal No. SA 12 CR 666 (1) FB charged the Defendant with two counts of aiding and assisting the preparation and presentation to the Internal Revenue Service of false and fraudulent tax returns, in violation of Title 26, United States Code, Section 7206(2).  These charges will be referred to herein as the "tax" counts. Defendant proceeded to a consolidated trial of both indictments before the Honorable Fred Biery, United States District Judge, and was found guilty of the mortgage fraud conspiracy, seven of the

substantive mail fraud counts[1] and both of the tax counts.  The Court sentenced the Defendant to a total of 135 months on each of the mortgage fraud counts to be served concurrently with each other, and to 36 months on each of the tax counts, to be served concurrently with each other, and to be served concurrently with the 135 months for the mortgage fraud counts.  The Defendant was also sentenced to serve concurrent terms of supervised release, specifically 5 years on each of Counts One, Seven, and Eight, and 3 years on the remaining counts of conviction in the mortgage fraud case, and 1 year on each count in the tax case.  With the exception of the vacation of Count Three on appeal, Defendant's convictions and sentences were affirmed on direct appeal.

The Defendant now seeks post-conviction relief through two separate motions, one filed in the mortgage fraud case, and the other filed in the tax case.  The United States will address each in turn, but for the reasons stated herein, they should each be denied.

II.     The Mortgage Fraud Counts

In seeking to vacate his mortgage fraud convictions and sentencing, the Defendant argues that the Court lacked jurisdiction due to the United States' failure to prove that the victim mortgage companies were "financial institutions" within the meaning of Title 18, United States Code, Section 20[2], insured by the Federal Deposit Insurance Corporation (herein "FDIC").  The Defendant argues that this is an essential element of the mortgage fraud counts.  The Defendant is mistaken.

---

[1]     One mail fraud count (Count Six) was dismissed at the close of the Government's case due to lack of evidence of the use of a common carrier engaged in interstate commerce to transport the documents in question.  On direct appeal, the United States conceded there was insufficient evidence to support the guilty verdict as to Count Three.

[2]     The portion of Section 20 relevant to the instant case is subsection one:
As used in this title, the term "financial institution" means—
**(1)** an insured depository institution (as defined in section 3(c)(2) of the Federal Deposit Insurance Act).

The Defendant was charged in Count One with conspiracy in violation of Title 18, United States Code, Section 1349, which provides: "Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." As charged in the Indictment, the conspiracy was "to devise a scheme to defraud one or more federally insured financial institutions, and other mortgage companies, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and to cause the use of the mails and interstate wire transfers for the purpose of executing and attempting to execute their fraudulent scheme, contrary to Title 18, United States Code, Sections 1341, 1343, 1344 and 2." Sections 1341, 1343, 1344 and 2 are, respectively, mail fraud[3], wire fraud, bank fraud, and the agency statute. This is considered a "multi-object" conspiracy. It is well established that although multiple objects may be alleged conjunctively, the government need only prove one of the multiple objects to sustain a conviction for conspiracy. *Griffin v. United States*, 502 U.S. 46 (1991). The jury in the instant case was instructed that the conspiracy was to commit mail fraud in violation of Section 1341. The jury charge given in this case is attached as Exhibit A. The jury was instructed that the essential elements for this conspiracy are:

*First:* That the defendant and at least one other person made an agreement to commit the crime of mail fraud as charged in the Indictment;

*Second:* The defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and

---

[3] Actually titled "Frauds and Swindles" which proscribes the use of "any private or commercial interstate carrier" in addition to the Postal Service, in executing fraud schemes.

3

*Third:* That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.

<u>Pattern Jury Instructions</u>, § 2.15A (Conspiracy to Commit Offense) Criminal Cases, United States Fifth Circuit District Judges Association, 2015, modified (written for Title 18, United States Code, Section 371, but applicable to Title 18, United States Code, Section 1349).

Counts Two, Four, Five, and Seven through Nine charged substantive mail fraud counts in violation of Section 1341. That statute provides in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * *, for the purpose of executing such scheme or artifice or attempting so to do, * * *, knowingly causes to be delivered by mail or such carrier according to the direction thereon, * * *, any such matter or thing, shall be fined under this title[4] or imprisoned not more than 20 years, or both. If the violation * * * affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

The Court instructed the jury that the essential elements to find a violation of this statute are:

*First*: That the defendant knowingly created a scheme to defraud, that is to obtain money from mortgage proceeds through the use of a simultaneous purchase at or about fair market value and sale at an artificially inflated price, known as a "land flip" or "property flip";

*Second*: That the defendant acted with a specific intent to defraud;

*Third*: That the defendant mailed something or caused another person to mail something through the United States Postal Service or a private or commercial interstate carrier, for the purpose of carrying out the scheme, to wit:

[Details of each carrier, property and mortgage lender for each respective count]

---

[4] $250,000 (footnote added).

>    *Fourth:*  That the scheme to defraud employed false material representations; and
>
>    *Fifth:*  That the scheme affected a financial institution in Count Two and Count Eight.  The parties have stipulated for purposes of Count Two that Supreme Mortgage Group (sic) in San Antonio, Texas is a financial institution.  The parties have also stipulated for purposes of Count Eight that Countrywide Bank, FSB is a financial institution.

<u>Pattern Jury Instructions</u>, § 2.56 (Mail Fraud) Criminal Cases, United States Fifth Circuit District Judges Association, 2015, modified.

In fact, the only relevance of a victim being a financial institution is for the enhanced punishment of 30 years' imprisonment versus 20, $1 million fine versus $250,000, and five years of supervised release versus three.  Under the ***Apprendi*** line of cases[5], the United States must plead and prove the status of a victim as a financial institution in order for the enhanced punishments to be imposed.  This is relevant in the instant case only as to the order of five years' supervised release for Counts One, Seven, and Eight as rest of the sentence imposed – 135 months and no fine fall well below the base statutory punishment of 20 years and a $250,000 fine.  Thus, while the United States was only required to prove that any given mortgage company was a "financial institution" insured by the FDIC in order to enhance punishment, it was not required to do so in order to establish federal jurisdiction.  Federal jurisdiction in this case was established through the Commerce Clause[6] via the use of common carriers engaged in interstate commerce to execute the scheme.  Further, the Defendant is mistaken in his assertion that the United States failed to prove that any of the lenders were financial institutions.  As noted in the jury charge and indeed in

---

[5]   ***Apprendi v. New Jersey***, 530 US 466 (2000)

[6]   United States Constitution, Article I, Section 8, Clause 3.

Defendant's Motion, the parties stipulated that the mortgage lenders in Counts Two and Eight[7] were financial institutions. It is axiomatic that a stipulation is treated as a proven fact. *See, e.g., United States v. Caldwell*, 586 F.3d 338, 343 (5th Cir. 2009) ("When one party stipulates to a disputed fact, the stipulation conclusively proves that fact.")

Inasmuch as the Court had jurisdiction, and each of the essential elements were found by the jury to have been proven beyond a reasonable doubt, Defendant is not entitled to the relief he seeks. His Motion to vacate the mortgage fraud convictions and sentences should therefore be overruled.

### III. The Tax Counts

The Defendant argues that his convictions and sentence for the tax counts should be set aside due to the ineffective assistance of both his trial and appellate counsel.[8] In support, he cites five overlapping or repetitive grounds, which will be addressed in turn.

#### A. The Standard of Review

The Sixth Amendment to the Constitution of the United States guarantees the right to effective assistance of counsel in criminal prosecutions. *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). To obtain the relief he seeks, the Defendant must prove both (1) that trial counsel's performance "fell below an objective standard of reasonableness", *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), *and* (2) that counsel's deficient performance prejudiced the Defendant, resulting in an unreliable or fundamentally unfair outcome in the proceeding. *Id*., at 691-92. Failure to satisfy either prong of the test is fatal to a claim of ineffective assistance of counsel. *Id*., at 697.

---

[7] Counts One and Seven were not mentioned, and the Court did not impose the enhanced sentence of 5 years' supervised release as to Count Two. If the Defendant is entitled to any relief at all, it is only to have his supervised release on Counts One and Seven reduced from five years to three.

[8] Stephen H. Gordon, Esquire, and Kerrisa Chelkowski, Esquire, respectively.

In evaluating the Defendant's claim, the Court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*., at 690. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Id*., at 688-89. Under this performance prong, there is actually a presumption that counsel's strategy and tactics fall "within the wide range of reasonable professional assistance." *Id*., at 689. Second-guessing, even with the benefit of hindsight, is discouraged. *Id*., at 689-90. Finally, in looking at prejudice, courts have held that they need not address the deficient performance prong where the evidence against the defendant was overwhelming. *Morales v. Ault*, 476 F.3d 545, 551 n.4 (8th Cir.2007), *cert. denied*, 552 U.S. 873 (2007).

B. Applying the Standard

Applying these principles to the instant case, Defendant clearly fails in establishing both a deficient performance by trial counsel, and resulting prejudice. Starting with the last point above, there is no need for this honorable Court to address the deficient performance prong where the evidence against the Defendant was overwhelming, for there can be no prejudice. In this case, it was.

As stated above, the Defendant was charged in the tax case with two counts of aiding and assisting the preparation and presentation to the Internal Revenue Service of false and fraudulent tax returns, in violation of Title 26, United States Code, Section 7206(2). Count One of the tax case specifically charged that the Defendant:

> did willfully aid and assist in, and procure, counsel, and advise, the preparation and presentation to the Internal Revenue Service of a joint U.S. Individual Income Tax Return, Form 1040, of himself and his wife, for the calendar year 2007. The return was false and fraudulent as to a material matter in that it reported on Line 17 Schedule E income in the amount of $200,991, whereas, as the Defendant then and

7

there well knew, he and his wife had Schedule E income well in excess of that amount.

Count Three charged that the Defendant and his wife:

> did willfully aid and assist in, and procure, counsel, and advise, the preparation and presentation to the Internal Revenue Service of a U.S. Return of Partnership Income, Form 1065, of Upscale Realty, LLC, for the tax year April 10, 2007, to December 31, 2007. The return was false and fraudulent as to a material matter in that it reported on Line 20 Other Deductions in the amount of $798,855, whereas, as the Defendants well knew, included in that amount was a $475,000 "management fee" to a corporation partly owned by Defendant Robert Brooks which had not in fact been paid.

The evidence at trial established that the Defendant and his wife were able to generate $29,306,205 in gross receipts from residential real estate sales in 2007, including those in the mortgage fraud case. The real estate sales were reported through two limited liability corporations, Upscale Realty, LLC and Relocation Studios, LLC. Both Upscale Realty and Relocation Studios were jointly owned, 50 percent each, by the Defendant and his wife and filed Forms 1065, U.S. Return of Partnership Income for 2007. The Defendant and his wife engaged Certified Public Accountant Stephen Scheller to prepare 2007 tax returns for their various business entities, including Upscale Realty, LLC, and their own personal tax returns. They conspired with Scheller to add a fictitious management fee expense of $475,000 to the 2007 Form 1065, U.S. Return of Partnership Income for Upscale Realty, LLC[9]. This $475,000 was reported as a management fee to Amadeus, Inc., a

---

[9] Specifically, Cheryl Brooks testified at Defendant's trial that a draft individual Form 1040 for her and Defendant showed that they would owe $145,600 in additional taxes. Defendant directed her to contact Scheller to ask what they could do because they did not have the money to pay this amount. Cheryl Brooks testified she asked Scheller what they could do. She then testified Scheller told her:

A. That we -- if we had an S corporation or a C corporation,
we can delay paying that tax by forwarding some income over to
that other company because the taxes are due in June and
because the year -- we were in 2008 at the time.
Q. Right, because you get into preparing a tax return after
the year has ended, right?
A. Yes. Because the 2008 return would -- more than likely
we'd get something back because we took losses, a lot of loss.
And if we filed that at the beginning of the year, then

8

corporation of which Robert Brooks was 50% owner[10], and which did no business in 2007. This falsely inflated the "other deductions" on the 1065 to $798,855. This overstated expense on the 2007 Form 1065, U.S. Return of Partnership Income for Upscale Realty (Count Three) then flowed to their 2007 Form 1040, U.S. Individual Income Tax Return (Count One) causing a material underreporting of the amount reported as Schedule E income, $200,991 by $475,000, resulting in underreporting of their adjusted gross income and taxable income, greatly reducing their tax obligation as a result. The Defendant, as his wife testified, well knew that his one business (Upscale) had not in fact incurred a $475,000 expense to his other business (Amadeus), and that it was done only to reduce the $145,600 in additional taxes that he and his wife would otherwise owe

---

whatever we get back, we can apply it to whatever's going to be due and what work out payments on the rest.
Q. Now, in suggesting that you come up with an S corporation or another corporation that you could put some money to, does that, in essence, ask -- **he's telling you to make something up?**
A. **Yes**.
Q. Did you discuss that with your husband?
A. I told him some of what he told me because I didn't totally understand what -- how it worked. So he talked to Stephen about it, Robert.
Q. And then -- in your presence?
A. I think it was on the phone. I'm not for sure.
Q. Okay. Afterward, did you and Mr. Brooks discuss what y'all were going to do?
A. Yes.
Q. And what was that?
A. That we would go with what Stephen suggested because we asked him: Is it okay to do that? And he said: Yeah. I do it with my clients -- I've done it with other clients before.
Q. But you did understand it was basically asking you to make something up?
A. At the time I didn't think about it. But yes, yes.

Exhibit B, excerpt of testimony of Cheryl Brooks, p. 19, line 8 – p. 20, line 13 (emphasis added).

[10]   The other 50% being owned by the Defendant's mortgage fraud co-defendant and co-conspirator Vadim Gazanchiyants.

9

to $45,990 falsely reported.[11]  The Defendant's wife testified to his full knowledge of both the mortgage fraud scheme and the tax scheme as follows:

> Q. In all the transactions that we've talked about, this charged mortgage fraud scheme, mail fraud, financial institution fraud, did you exercise any independent decision making?
> A. No.
> Q. Did you know it was wrong?
> A. Yes. Not all of it, no.
> Q. Not all of it?
> A. No.
> Q. But certainly enough?
> A. Yes.
> Q. Was there any action -- and the same with the tax. You -- did you know it was wrong to file false tax returns?
> A. To file false tax returns, yes.
> Q. At any time in this whole period of business dealings, did you ever exercise any independent decision making without first getting the approval or direction of your husband?
> A. No.

Exhibit B, excerpt of testimony of Cheryl Brooks, p. 26, lines 2 – 19.  The evidence of Defendant's willfully causing false tax returns to be filed was overwhelming, rendering moot under *Morales v. Ault, supra*, the need to examine any deficiency of counsel.

   C.  Defendant's Grounds for Relief

Turning to the question of whether either of Defendant's counsel were deficient, the United States submits they were not.  In his Ground I, he states that his trial counsel was ineffective for not seeking a change of venue to the Northern District of Texas as could have been done pursuant to Title 18, United States Code, Section 3237(b).  As evidenced in the e-mails attached as Exhibit C, the subject of venue for the tax charges were discussed with counsel for the Defendant pre-

---

[11] Cheryl Brooks testified that she would not "have done any of that" on her own.  Asked "[w]hose permission did you need to undertake that?"  She answered with the Defendant's first name.
Exhibit B, excerpt of testimony of Cheryl Brooks, p. 23, lines 10-14.

indictment. As stated in the email, the Defendant agreed to waive venue. In addition to the agreement to the Defendant's self-surrender and continuation on the same conditions of pretrial release in exchange for this waiver, there were discussions of the benefit to the Defendant of having both cases consolidated, specifically significantly increasing the likelihood that the mortgage fraud and tax cases would be grouped under U.S.S.G. §3D1.2 for purposes of calculating the sentencing guidelines, also significantly increasing the likelihood that, as indeed happened, sentences on the various counts would be served concurrently, whereas had venue placed in separate divisions or different districts, the mortgage fraud and tax counts may not have been grouped, and consecutive sentences may have been imposed.

Even assuming this strategic decision to be the result of ineffective assistance, Defendant cannot show actual prejudice. Defendant states that his witnesses Stephen Scheller and Sidney Golding would only be willing to testify in Dallas and would not be willing to travel to San Antonio. It is well established that once served with a subpoena, the witness cannot refuse to appear as ordered to testify[12]. Indeed, according to Defendant's counsel, Stephen Scheller was under subpoena, and counsel ultimately chose not to call him to testify.[13] There was no motion to quash the subpoena, and no indication that Scheller would refuse to testify under the Fifth Amendment.[14]

Defendant next cites as prejudice that in separate trials, he "would have been able to testify regarding the Tax Fraud Counts without having to answer questions on the Mail Fraud Counts."

---

[12]   *See* United States Constitution, Sixth Amendment ("In all criminal prosecutions, the accused shall enjoy the right * * * to have compulsory process for obtaining witnesses in his favor, * * *.")

[13]   Exhibit D, excerpt of trial transcript from January 25, 2013, pp. 966-67 (Document 761, pp. 202-03 of 204 (witness directed to appear); Exhibit E, excerpt of trial transcript from January 28, 2013, p. 1153 (Document 762, p. 185 of 191) (witness not being called).

[14]   Though as shown in the January 25, 2013, transcript referenced above, the Hon. Fred Biery, having heard the previously-cited testimony of Cheryl Brooks, stated an intent to admonish Scheller of his right to do so.

11

Defendant cannot show this to be the case, and in fact it is more likely than not that the United States would have been permitted to cross-examine him about the mail fraud transactions pursuant to Fed.R.Evid. 404(b)[15] to show the Defendant's intent, preparation, plan, knowledge, and absence of mistake.  "When Rule 404(b) evidence is 'central to the prosecution's case' it should not lightly be excluded.... Exclusion under Rule 403 'is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility.'" *United States v. Troya*, 733 F.3d 1125, 1131-32 (11th Cir. 2013) (citations omitted).

In his Ground II, the Defendant alleges that both his trial and appellate counsel were ineffective, to his prejudice, for failing to challenge the lack of "a single overt act by Brooks that establishes that he aided and assisted in the preparation of the Tax returns."  Contrary to his argument, an "overt act" is not an essential element of Title 26, United States Code, Section 7206(2).[16]  The essential elements, as correctly stated in the Court's charge to the jury, and made specifically applicable to this case are:

---

[15]  Crimes, Wrongs, or Other Acts.
(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

(A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
(B) do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice.

[16]  "[O]ne must engage in 'some affirmative participation which at least encourages the perpetrator' in order to be guilty of aiding in the preparation and presentation of false tax returns." *United States v. Sassak*, 881 F.2d 276, 277 (6th Cir. 1989) (*quoting United States v. Graham*, 758 F.2d 879, 885 (3d Cir. 1985)).  The testimony of Cheryl Brooks, cited above, establishes that Defendant played such a willful role when he agreed to have Scheller prepare the returns with the false expense and resulting reduced income as discussed above.

12

*First:*   That the defendant aided in, assisted in, procured, counseled, and advised the preparation and presentation of a return arising under the internal revenue laws;

*Second:*   That in this return the defendant falsely stated that:

>Count One:   The defendant received gross income of $200,991 during the year 2007.

>Count Three: Upscale Realty, LLC had "Other Deductions" in the amount of $798,855.

*Third:*   That the defendant knew that the statement in the return was false;

*Fourth:*   That the false statement was material; and

*Fifth:*   That the defendant aided in, assisted in, procured, counseled, and advised the preparation and presentation of this false statement willfully, that is, with intent to violate a known legal duty.

Pattern Jury Instructions, § 2.102B (Aiding or Assisting in Preparation of False Documents under Internal Revenue Laws) Criminal Cases, United States Fifth Circuit District Judges Association, 2012, modified; ***United States v. Coveney***, 995 F.2d 578, 588 (5th Cir. 1993)

It is well established that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. * * *.  It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such statement." Fed.R.Crim.P. Rule 7(c)(1).  An indictment that closely tracks the language under which it is brought is sufficient to give a defendant notice of the crimes with which he is charged.  ***United States v. Thomas***, 348 F.3d 78, 82 (5th Cir.2003), *cert. denied*, 540 U.S. 1207 (2004).  Under the Sixth Amendment, an indictment's function and purpose is to inform the defendant of the "nature and cause of the action." The indictment should permit a defendant to understand the charges,

prepare a defense, and invoke double jeopardy.  *Hamling v. United* States, 418 U.S. 87, 117-18 (1974), *United States v. Franco*, 632 F.3d 880, 885, (5th Cir. 2011), *cert. denied*, 563 U.S. 999 (2011), *United States v. Santos-Riviera*, 183 F. 3d 367, 369 (5th Cir. 1999), *cert. denied*, 528 U.S. 1054 (1999).  The tax counts, cited above, clearly do this.  Thus, neither counsel may be deemed to have been ineffective in not challenging the tax indictment.

In Ground III, the Defendant argues that his trial counsel was deficient to his prejudice in failing to "request and/or submit specific jury instructions approved by the District Court."  The Defendant is factually incorrect.  As shown by Exhibit F, e-mail from his trial counsel to the trial court's law clerk, Defendant's counsel submitted numerous proposed jury instructions, including separate instructions on good faith.  The jury charge as given by the Court contained several of these, and trial counsel argued Defendant's lack of willfulness and affirmative good faith reliance to the jury, even in the absence of any evidentiary basis for the latter, as the Defendant declined to testify.  While the Defendant goes on in this Ground to complain again about the decision to not call Scheller as a witness, it is implicit in his argument that he was relying on Scheller to testify to the Defendant's good faith belief.  Scheller could not have done so, as he cannot testify to the Defendant's state of mind.  Defendant also complains that his counsel did not object to the Good Faith instruction as given or request a modification to add "CPA" to "attorney", and he was thereby prejudiced in that the jury thereby could not have accepted his defense of reliance on Scheller. The Defendant is incorrect.  The standard for determining the sufficiency of a jury instruction is "whether the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them." *United States v. Stacey*, 896 F.2d 75, 77 (5th Cir. 1990).  As stated above, the Court instructed the jury that Defendant had to have acted "willfully, that is, with intent to violate a known legal

duty."[17]  The United States submits that a Good Faith Defense instruction is superfluous to the willfulness instruction in that it is axiomatic that if one acted in good faith, one did not intentionally violate a known legal duty.  Defendant cannot show that his counsel was ineffective nor can he show prejudice.

In his Ground IV, the Defendant states that trial counsel "was ineffective for not objecting or filing a Motion for improper Joinder in pretrial (sic) under Rule 12(b)(3)(b)(iv) and Rule 14." Once again, the Defendant is wrong on both the facts and the law.  As stated, initially, the mortgage fraud case and the tax case were the subjects of separate indictments.  They were brought separately due both to the venue issue with the tax case discussed above, and due to the fact that the mortgage fraud case involved 21 other defendants.  They were consolidated for trial under Fed.R.Crim.P. Rule 13[18] pursuant to the Government's Unopposed Motion For Joint Trial Of Separate Cases (Document 612), filed after a combination of severance and guilty pleas left the Defendant as the sole defendant going to trial.  As stated therein, the Defendant joined in the consolidation request.  He cannot complain of it now.  Further, as stated therein, had Defendant been charged alone initially, the mortgage fraud and tax offenses would have been properly joined pursuant to F.R.CRIM.P. Rule 8(a)[19] inasmuch  as both the income in question in Count One and the entity in question in Count Three[20] of the tax case are the income derived from, and an entity used in, the transactions alleged in the mortgage fraud case.

---

[17]     "Willfulness" being defined for criminal tax cases as "a voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192, 200 (1991).
[18]     "The court may order that separate cases be tried together as though brought in a single indictment or information if all offenses and all defendants could have been joined in a single indictment or information."

[19]     "JOINDER OF OFFENSES. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."

[20]     Upscale Realty, LLC.

Defendant cites as prejudice his inability to testify solely to his reliance on Scheller without exposing himself to cross-examination about the mortgage fraud transactions.  This has been refuted above.  Further, the United States notes that the items cited by the Defendant in paragraphs 5. D) and E) of his supporting facts would have called for hearsay, and objection thereto would likely have been sustained.  In paragraph 7, Defendant states conclusively that there was prejudicial spillover of evidence, but he doesn't specify what that was.  Again, it is highly significant that the source of income and entity involved in the tax case was an integral part of the mortgage fraud case.  They were therefore intrinsic to each other[21].

Ground V parts 1), 2), and 3), are repetitive of issues discussed above.  In part 4), Defendant states that trial counsel was ineffective for "failing to submit the FBI wire tap as substantial evidence".  As a preliminary matter, the United States notes that there was no "wire tap" nor any other Title III activity by the FBI.  The United States believes that what the Defendant is referring to is a video and audio recording of a meeting between Scheller and Cheryl Brooks, recorded by special agents of the Internal Revenue Service – Criminal Investigations (IRS-CI) with the consent of Cheryl Brooks.  The United States reasserts that under the standard for determining ineffective assistance of counsel set forth in ***Strickland v. Washington*** there is actually a presumption that counsel's strategy and tactics fall "within the wide range of reasonable professional assistance." 466 U.S., at 689.  Second-guessing, even with the benefit of hindsight, is discouraged. ***Id***., at 689 -90.  To assist the Court in deciding whether to hold a hearing on this issue, the United States will proffer[22] that the recording of Scheller does not exonerate the Defendant.  At best, Defendant can merely claim not to have known the details of what was discussed.  In fact, it is Scheller, without

---

[21] Alternatively, as discussed above, such cross-examination should be permitted pursuant to Fed.R.Evid. Rule 404(b).
[22] Trial counsel, Stephen H. Gordon, Esquire, has refused to provide an affidavit on any of the issues raised by the Defendant, and has told the undersigned that he will provide evidence only if ordered to do so by the Court.

any supporting facts from Cheryl Brooks, who first starts talking about an expense to another entity, and states the specific amount to be claimed to fraudulently reduce the Brookses' amount of tax due to an amount they could then pay.  In view of the statements made by Scheller,[23] it was a very reasonable decision by trial counsel to not use that recording in evidence.  Defendant cannot show ineffective assistance of counsel in that decision under **Strickland v. Washington** as cited immediately above.

In Ground V part 5), Defendant argues that appellate counsel was ineffective for her failure "to raise a Good Faith Reliance Defense Theory."  Again, the Defendant is incorrect.  Appellate counsel, limited to the record of the proceedings in the District Court, including the Defendant's decision to not testify, raised as an assignment of error that the convictions were against the weight of the evidence.  This would include the willfulness element discussed above, which as stated above, is *per* se the absence of good faith.  Though not specifically raised as such, it was conceptually included in the appeal.  Counsel was not ineffective.

IV. Conclusion

For the reasons stated herein, Defendant's challenges to both his mortgage fraud convictions and his tax convictions should be denied.

                                            Respectfully submitted,

                                            RICHARD L. DURBIN, JR.
                                            UNITED STATES ATTORNEY
                                            _____/s/_____
                                            WILLIAM R. HARRIS
                                            Assistant United States Attorney
                                            Ohio State Bar No. 0017818
                                            601 N.W. Loop 410, Suite 600
                                            San Antonio, Texas 78216-5597
                                            (210) 384-7025 / (210) 384-7028 FAX

---

[23] As supported by Cheryl Brooks' testimony about it cited above.

CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of November 2016, a true and correct copy of the foregoing instrument was sent by ordinary U.S. mail or FedEx to the Defendant as follows:

Robert Nicholas Brooks
Inmate No. 63355-280
El Reno Federal Correctional Facility Work Camp
P.O. Box 1500
El Reno, Oklahoma 73036

_____/s/_____
WILLIAM R. HARRIS
Assistant United States Attorney